|WILLIAMS, J.
The issue presented by this appeal is whether a claim under a fire insurance policy has prescribed. The trial court granted an exception of prescription filed by defendant, Shelter Insurance Companies (“Shelter”), with respect to a claim for additional living expenses made by plaintiffs, Gordon and Geneva McQuillen (“McQuillens”). For the reasons set forth below, we affirm.
FACTS
The facts of this case are mostly undisputed. The McQuillens’ home burned on January 16, 2000. At that time, the home was covered by a fire insurance policy issued by Shelter. The McQuillens submitted a proof of loss on January 27, 2000, and on February 21, 2000, Shelter issued a draft to the McQuillens in the amount of $43,090. The draft indicated that it was in payment of “personal property, add’l living expense, other structures, & guns.” An additional notation on the draft indicated that $1,200 of the payment was for additional living expenses, while $1,000 was for other structures.
On August 9, 2000, an attorney representing the McQuillens wrote a letter to Shelter stating in pertinent part:
From my conversation with Mr. McQuillen, I understand that his home burned and that although Mr. McQuil-len’s policy provides for “Additional Living Expense” of $12,000.00, that Shelter has refused to further pay for the McQuillens’ living expenses beyond three months or $1,200.00 on the grounds that he could have had a new home built within that time. This refusal has been made despite the fact that Mr. McQuillen experienced serious health problems during this period of time.
I also understand from Mr. McQuillen that despite the fact that Mr. McQuillen obtained insurance for the beauty shop located on the premises with limits of $5,000.00, Shelter has | ¿refused to pay for the destruction of the shop and for the equipment and materials located therein.
Mr. McQuillen feels and I concur that Shelter in so refusing has breached its contract with the McQuillen’s and unless satisfactory redress is made within six weeks time, I shall advise the McQuil-lens to file suit for ordinary and treble damages for the insurance company’s breach of contract.
On September 8, 2000, Will Burgess (“Burgess”), a claims representative for Shelter, wrote a letter to the McQuillens’ attorney. Although a copy of the letter is not included in the record, it apparently either was or should have been attached to the plaintiffs’ memorandum in opposition to the exception of prescription. In any event, the attorneys argued about the meaning of the letter at the hearing on the exception of prescription, and Shelter does not assert that the letter was not sent by Burgess.[1] The letter from Burgess included a draft for $5,000 in payment for the McQuillens’ beauty shop and indicated that *874 Burgess had unsuccessfully attempted to contact the McQuillens’ attorney regarding the payment. Burgess then requested the McQuillens’ attorney to call him “so that we can discuss the matter.” At the beginning of the next paragraph of the letter, Burgess also asked the McQuillens’ attorney to call him “to discuss any other matters related to the claim.” The record does not reflect 13any further communication between the parties prior to the filing of the McQuillens’ petition on October 2, 2001.[2]
The McQuillens’ petition against Shelter asserted a breach of contract, and while mentioning that Shelter had paid $5,000 in response to their attorney’s demand concerning the loss of the beauty shop and beauty shop equipment, the petition did not mention either the $1,200 for additional living expenses already paid by Shelter, or Burgess’ letter of September 8, 2000. Instead, the petition asserted that for the period of time required to rebuild the McQuillens’ home, they had been forced to use a rental home owned by Mrs. McQuil-len that otherwise would have been a source of income for them. The McQuil-lens simply asserted that Shelter was indebted to them for the increase in their living expenses occasioned by the loss of the covered property, as'well as for statutory penalties, attorney fees and costs.
After filing a general denial in February 2002, Shelter filed its peremptory exception of prescription in March 2002. Shelter attached to its memorandum in support of the peremptory exception a copy of its attorney’s August 2000 letter, a copy of the insurance policy, a copy of the McQuillens’ proof of loss and a copy of the draft issued by Shelter to the McQuillens. In response, the McQuillens filed a memorandum in opposition which indicated that attached to it as Exhibit A was the claim | ¿representative’s letter. However, the record on appeal does not include the Burgess letter as an attachment to the memorandum. Essentially, the McQuillens argued that because Shelter not only failed to notify the McQuillens in writing that it would not pay the additional living expenses, but also projected “an attitude of negotiation as per Will Burgess’s letter of September 8, 2000,” Shelter extended the period for filing suit.
At the hearing on the exception of prescription, Shelter’s attorney argued that Shelter had paid $1,200 on February 21, 2000, for additional living expenses anticipated to cover the three months following the fire. Because the McQuillens’ attorney’s letter of August 9, 2000 indicated that Shelter had refused to pay for further living expenses, Shelter argued that at the very latest, prescription began to run on August 9, 2000. The language of the fire insurance policy required suit to be filed within one year after the loss or damage occurred, but the policy also stated that this period was extended by the number of days between the date a proof of loss was submitted and the date that the claims were denied in whole or in part. Thus, Shelter argued that because suit was not filed until October 2, 2001, more than a year after the August 9, 2000 letter, prescription had run.
The McQuillens’ attorney argued that Shelter had admitted that it owed additional money for the beauty shop and had paid $5,000.00 on September 8, 2000 in response *875 to counsel’s demand letter. The Burgess letter that accompanied the payment requested counsel to call Burgess to discuss any other matters related to the claim. The McQuillens’ counsel contends this was not a refusal to pay as contemplated by the policy. He | (¡asserts that at the time they received the Burgess letter, they were still waiting to find out how much was owed for additional living expenses because the house had not been rebuilt.
Shelter’s counsel then responded that the Burgess letter “doesn’t say anything about we’re willing to pay some additional living expense.” Furthermore, counsel for Shelter argued that under the provisions of LSA-R.S. 22:651, an insurer’s investigation of any loss or claim under any policy or participation in negotiations concerning a possible settlement of any such loss or claims shall not constitute a waiver of any policy provision or any defense of the insurer. Thus, counsel argued that even if the Burgess letter had specifically used the word “negotiate,” prescription would not have been interrupted. At the conclusion of the hearing, the trial court granted the exception of prescription. The plaintiffs appeal.
DISCUSSION
The provisions of LSA-R.S. 22:691 require fire insurance contracts in Louisiana to conform as to all provisions, stipulations, agreements and conditions, with the Louisiana standard fire insurance policy as set forth in Subsection F of the statute. With respect to the requirements in case a loss occurs, the standard provisions require, in pertinent part, that within 60 days after a loss, unless the time is extended by the insurer, the insured shall render to the insurer a proof of loss, and the amount of loss for which the insurer may be liable shall be payable 60 days after the proof of loss is submitted and ascertainment is made. No suit or action on the policy for the recovery of a claim is sustainable unless all the requirements of the policy 1 fihave been complied with, and “unless commenced within twelve months next after the inception of the loss.”
The provisions of the Shelter policy at issue follow the standard fire policy provisions by stating that Shelter may not be sued unless there is full compliance with all the terms of the policy and that suit must be brought within one year after the loss or damage occurs. However, the Shelter policy extends the one-year period by the number of days between the date a proof of loss is submitted and the date the claims are denied in whole or in part. In the instant case, the loss occurred on January 16, 2000, but suit was not brought until October 2, 2001. As previously noted, a proof of loss was submitted on January 27, 2000, and the McQuillens’ attorney’s letter of August 9, 2000, indicates that Shelter had refused to pay additional living expenses beyond the $1,200 already paid. While the letter does not give the exact date of Shelter’s refusal, the refusal obviously occurred no later than the date of the letter itself. Thus, the one-year period within which to file suit should have begun running at least after August 9, 2000. As a result, without some additional action on the part of the insurer that could have affected the running of prescription, the McQuillens’ action was prescribed at the time they filed their petition in October 2001.
Generally, when a petition shows on its face that prescription has run, the burden is on the plaintiff to prove the interruption of prescriptive period. Frederick v. AETNA Life and Casualty Insurance Co., 467 So.2d 600 (La.App. 3d Cir.1985). In the instant case, the McQuillens had the burden of |7proving prescription *876 had not run because their petition showed on its face that the claim had prescribed.
In Greeson v. Acceptance Insurance Co., 32,159 (La.App.2d Cir.8/18/99), 738 So.2d 1201, we reviewed the sustaining of a peremptory exception of prescription in a case in which the plaintiff sought to recover under a fire insurance policy for a fire that destroyed his home. In addressing the question of whether the insurer had waived the policy requirement that suit be filed within one year after the loss, we stated:
An insurer’s conduct can constitute an unintended waiver of its right to claim the benefit of a one-year prescriptive period for filing suit.... However, an insurer’s investigation of any loss or claim under any policy or participation in negotiations concerning a possible settlement of any such loss or claim shall not constitute a waiver of any policy provision or of any defense of the insurer. LSA-R.S. 22:651.
Unless the insurer in some manner leads the insured to reasonably believe the time limitation has been waived while the claim is under consideration or in some other way acts so as to induce the insured to withhold suit, he must file his action within the prescribed period even if the claim is still pending.... The crucial determination is whether the overall actions of the insurer’s claims adjuster, during the year after the loss, led plaintiff to reasonably believe the insurer would not require compliance with the policy provision that suit must be filed within one year.
Id. at 1204 (Citations omitted).
Under the facts of the instant case, at issue is whether the Burgess letter of September 8, 2000, in which Shelter’s claims representative requested the McQuillens’ attorney to contact him to discuss matters related to their claim, can be said to have led the McQuillens to reasonably believe that the one-year time limitation was waived. We conclude that it cannot.
|sAs we indicated in Greeson, supra, the provisions of LSA-R.S. 22:651 specifically state that investigating any loss or claim under any policy, or engaging in negotiations looking toward a possible settlement of any such loss or claim, shall not be deemed to constitute a waiver of any provision of a policy or of any defense of an insurer thereunder. Here, the Burgess letter, at best, might be construed as an indication of a willingness to negotiate or further investigate the McQuillens’ claims, but the letter cannot reasonably be construed as a waiver of the “one-year time limitation” provision of the policy, or an acknowledgment sufficient to interrupt prescription.
In Frederick, supra, homeowners brought suit against their insurer for damages allegedly resulting from nearby seismic operations. The seismic operations took place on February 11 or 12,1981. On February 21, 1981, the plaintiffs verbally complained to the oil company conducting the operations about the damages, and the plaintiffs also made a claim to their insurance company. On November 4, 1981, the claims adjuster sent a letter to the plaintiffs’ attorney stating that the adjuster had received their attorney’s letter of October 29, 1981, and that the adjuster believed they might be able to finalize Mr. Frederick’s claim “with the receipt of a notarized statement giving the details of his loss.” The letter also requested “times and dates” so that the insurer could proceed against the oil company. The letter closed by stating that the adjuster looked forward to hearing from plaintiffs’ attorney. Following the letter, there was no evidence in the record that the plaintiffs took any steps toward fulfilling the request for a *877 | aproof of loss, and the next action taken by plaintiffs was to file suit on April 16, 1982.
The plaintiffs in Frederick contended that the adjuster’s letter to their attorney was an acknowledgment of the debt sufficient to interrupt the running of prescription. However, the appellate court held that while an acknowledgment need not be in the form of a compromise agreement and, for that matter, did not need to be in particular form, the acknowledgment must contain a clear intent to interrupt the running of prescription. The court then stated:
Due to the fact that candid and good faith settlement negotiations should be encouraged as a matter of public policy ..., we find that defendant’s letter of November 9, 1981, is merely recognition of plaintiffs’ claim which may be finalized upon proof of the damage incurred. The letter was merely one step in the negotiation process and did not acknowledge any debt toward the plaintiffs.
We agree with the reasoning of the court in Frederick, and when that reasoning is applied to the instant case, we conclude that the Burgess letter did not acknowledge any debt owed by Shelter to the McQuillens and could have not reasonably led them to believe that Shelter was waiving the time limitation in its policy. Thus, prescription was not interrupted.
CONCLUSION
For the foregoing reasons, the judgment of the trial court granting the defendant’s exception of prescription is hereby affirmed. All costs of this appeal are assessed to the plaintiffs-appellants, Gordon McQuillen and Geneva McQuillen.
AFFIRMED.

. Although Shelter argues on appeal that the September 8, 2000 letter should be disregarded because only matters in evidence are to be considered by a court of appeal, we note that no evidence actually was introduced at the hearing on the exception of prescription by either side, and neither side raised objections or issues concerning what facts properly were before the court for consideration. Instead both sides made their respective arguments based on the same set of facts, and we will use those facts for purposes of deciding the issue of prescription now before us.

. Although the McQuillens’ appellate brief indicates that their attorney spoke with Burgess on at least two occasions between September 8, 2000 and the early part of the third quarter of 2002, and that Burgess had asked the McQuillens’ attorney about the amount the McQuillens were asking for additional living expenses, this information is not found anywhere in the record and will not be considered by this Court.